## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| In re: | ) | Chapter | 7 |
| People's Power and Gas, LLC | ) | | |
| Debtor | ) | Case No. | 14-50574 |
| | ) | | |
| Richard M. Coan, Trustee | ) | | |
| Plaintiff | ) | | |
| v. | ) | | |
| Madstar Mobile, LLC | ) | Adv. Pro. No. | 16-05028 |
| Defendant | ) | | |
| | ) | | |

### Appearances

Timothy D. Miltenberger
Coan Lewendon Gulliver & Miltenberger          *Attorney for the Plaintiff*
95 Orange Street
New Haven, CT 06511


Mr. David Pearsall                              *Pro Se* [1]
69 Bank Street,
New Milford, CT 06776-2701


## MEMORANDUM OF DECISION ON
## MOTION FOR PARTIAL SUMMARY JUDGMENT


Julie A. Manning, Chief United States Bankruptcy Judge

### I.      Introduction

On April 18, 2014, Connecticut Light & Power Company, Yankee Gas Services

Company, and the United Illuminating Company filed an involuntary Chapter 7 petition against

People's Power and Gas, LLC (the "Debtor").  An Order for Relief entered on May 21, 2014 and

Richard M. Coan was appointed as the Chapter 7 Trustee (the "Trustee").

---

[1] The Defendant was originally represented by counsel.  After extensive discussion on the record
during a Pretrial Conference held on September 6, 2016, and after two hearings on the Motion to
Withdraw Appearance filed by Defendant's counsel held on September 27, 2016 and October 18,
2016, the Court entered an Order allowing counsel to withdraw his appearance.  ECF 24.

In this adversary proceeding, the Trustee filed a complaint (the "Complaint") seeking to avoid preferential transfers made to Madstar Mobile, LLC (the "Defendant") under: (i) 11 U.S.C. § 547(b) (Count I); (ii) constructively fraudulent transfers made to the Defendant pursuant to 11 U.S.C. § 548(a)(1)(B) (Count II); (ii) constructively fraudulent transfers made to the Defendant under 11 U.S.C. § 544(b)(1) and Conn. Gen. Stat. § 52-552a, *et seq.* (Counts III and IV); and (iv) actual fraudulent transfers made to the Defendant (Count V). The Complaint also seeks to recover those transfers from the Defendant pursuant to 11 U.S.C. § 550 (Count VI). *See* ECF 1. The Trustee has moved for summary judgment on the constructive fraudulent transfer claims in Counts II, III, and IV of the Complaint. The Defendant has not filed any response to the Motion for Summary Judgment.

Because the Motion for Summary Judgment only addresses the constructive fraudulent transfer counts of the Complaint, the Court deems it a Motion for Partial Summary Judgment and this decision, accordingly, will only address Counts II, III, IV and VI of the Complaint. For reasons discussed below, the Motion for Partial Summary Judgment is GRANTED.

## II.    Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings pursuant to 28 U.S.C. § 1334(b). The Bankruptcy Court derives its authority to hear and determine this matter pursuant to 28 U.S.C. §§ 157(a) and (b)(l) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2).

## III.    Background

On May 19, 2016, the Trustee filed the Complaint against the Defendant. On August 16, 2016, the Defendant filed its Answer and Affirmative Defenses (the "Answer"). *See* Answer,

ECF 14.  On February 20, 2018, the Trustee filed the pending Motion for Partial Summary Judgment and Memorandum of Law in Support of Motion for Summary Judgment.  In the Motion for Partial Summary Judgment, the Trustee primarily relies on an expert report prepared by Richard Finkel, CPA/CFF, CFE, and CIRA of the accounting firm Blum, Shapiro & Company, P.C. (the "Finkel Affidavit") as evidence that no genuine issue of material fact exists and summary judgment should be granted as a matter of law.  During a March 12, 2019 status conference, the Trustee was given leave to file a Supplemental Memorandum of Law on the issue of whether the Court could rely on the affidavit of an expert to establish the "reasonable equivalent value" prong of a fraudulent transfer claim.

On April 10, 2019, the Trustee filed a Supplemental Memorandum in Support of his Motion for Partial Summary Judgment (the "Supplemental Memorandum").  On July 16, 2019, a status conference was held during which Mr. David Pearsall, the principal of the Defendant, appeared.  Although the Defendant had not responded to the Motion for Partial Summary Judgment or to the Supplemental Memorandum, Mr. Pearsall was granted leave to file a response by August 2, 2019, and to prepare and submit a financial affidavit to the Trustee by August 2, 2019.  To date, neither Mr. Pearsall nor the Defendant have filed a response to the Motion for Partial Summary Judgment.

## IV.    Undisputed Facts

Under Rule 56(a)(1) of the Local Rules of Civil Procedure of the United States District Court for the District of Connecticut, each material fact set forth in a movant's statement and supported by the evidence "will be deemed to be admitted (solely for the purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule…"  D. Conn. L. R. 56(a)(1);

*See also Parris v. Delaney (In re Delaney)*, 504 B.R. 738, 746-747 (Bankr. D. Conn. 2014).  In this adversary proceeding, the Trustee has fully complied with the Local Rule and has filed a Local Rule 56(a)(1) Statement.  Since the Defendant has not responded to the summary judgment motion, including not filing a Local Rule 56(a)(2) statement, any argument that the Defendant may have opposing the Motion for Partial Summary Judgment is waived, and all material facts set forth in the Local Rule 56(a)(1) Statement are deemed admitted.  D. Conn. L. Civ. R 56(a)(1).

The Court finds the following undisputed facts[2]:

1.      The petition date is April 18, 2014 (the "Petition Date").

2.      The Debtor was a single member LLC of which David Pearsall was the sole member.

3.      The Debtor was in the business of purchasing wholesale electricity and natural gas from various independent service operators ("ISOs") and reselling it to residential and commercial customers in the New York and New England Markets.

4.      To qualify to purchase from ISOs, the Debtor was obligated to meet certain requirements and to post collateral in the form of cash in the amount of approximately 2.5 the 7-day wholesale cost of the purchased electricity.

5.      The Debtor entered into a Master Factoring Agreement (the "Agreement") with Forest Capital, LLC in May 2012, and amended the Agreement in November 2013. Under the terms of the Agreement Forrest Capital LLC provided the collateral to ISOs based on various percentages of unbilled and billed accounts receivable.

---

[2] All facts come from the Trustee's Rule 56(a)(1) Statement, the Trustee's briefs in support of his Motion for Partial Summary Judgment, the Complaint, and the Answer.

6.    The Debtor was required to pay interest of 20.25% on the collateral posted by Forrest Capital LLC.

7.    The Debtor was maintaining its books on a cash basis from inception in March 2011 through April 2012.  Under the cash method of accounting, liabilities such as accounts payable and accrued expenses are not recorded.

8.    The debtor changed its bookkeeping method to an accrual basis in May 2012. Under the accrual basis of accounting, liabilities such as accounts payable and accrued expenses are recorded.

9.    The Debtor's assets consisted of cash, accounts receivable, leasehold improvements, computers, furniture and fixtures, and prepaid rent and security deposits from related companies including the Defendant.  The Debtor's liabilities consisted of trade accounts payable, accrued expenses, accrued payroll, and the debt to Forest Capital LLC.

10.    The value of the Debtor's liabilities was greater than the value of its assets, at fair market value at all times alleged in the Complaint.

11.    In the one year prior to the Petition Date (the "Preference Period"), the Defendant received a total of eighteen transfers totaling $122,900.00.

12.    In the four year period prior to but less than one year prior to the Petition Date (the "Fraudulent Transfer Period"), the Debtor made fourteen transfers to the Defendant totaling $86,350.00.

13.    The descriptions in the Debtor's ledger indicate the Debtor was paying the Defendant's bills

14.    The Debtor had no ownership interest in the Defendant.

15.    The Debtor's ledger does not indicate that the Debtor was engaged in business with the Defendant.

16.    The Debtor's ledger does not indicate any business purpose for the transactions.

## V.    Legal Standard

Under section 548 of the Bankruptcy Code, the power to avoid fraudulent transfers is vested in the trustee.  11. U.S.C. § 548(a)(1).  A trustee may avoid transfers under section 548 to recover assets for the benefit of the estate.  *See id.; see also* 8 COLLIER ON BANKRUPTCY, ¶ 548.02[1].  In addition to the powers in section 548, section 544 of the Bankruptcy Code permits the trustee to recover fraudulent transfers under applicable state law.  11 U.S.C. 544(b).  The applicable state law is the Connecticut Uniform Fraudulent Transfer Act ("CUFTA"), which provides a four year statute of limitations for fraudulent transfers.  *See* Conn. Gen. Stat. § 52-552j.

Federal Rule of Civil Procedure 56(a), made applicable to these proceedings by Fed. R. Bankr. P. 7056, directs the court to grant summary judgment if the movant shows no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  When determining a motion for summary judgment, the court is not permitted to resolve any issues of fact; it must only determine whether a genuine issue of material fact exists and, if not, , whether the movant is entitled to judgment as a matter of law.  *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  The moving party bears the burden of proving that no genuine material factual issues exist.  *Id*.  When determining whether the movant has met that burden, the court is to draw all reasonable inferences, and resolve all ambiguities, in favor of the non-moving party.  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Electric*

*Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009).

While all reasonable inferences must be drawn in favor of the nonmoving party, the nonmoving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Gemmink v. Jay Peak Inc.*, 807 F.3d 46, 48 (2d Cir. 2015) (citing *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015)); *see also Matsushita*, 475 U.S. at 587 (citing Fed. R. Civ. P. 56(e)). "If a party fails to …properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed.R.Civ.P. 56(e)(2). As such, a "movant's burden is satisfied if it can point to an absence of evidence to support an essential element of a nonmoving party's claim." *Betancourt v. Slavin*, 676 F. Supp. 2d 71, 76 (D. Conn. 2009) (citing *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)). "The purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial' meaning a party may not create a genuine issue of material fact by resting on the allegations or denials contained in his pleadings." *Matsushita*, 475 U.S. at 587 (quoting Advisory Committee Note to 1963 Amendment of Fed.R.Civ.P. 56(e)).

## VI.    The Constructive Fraudulent Transfers

The constructive fraudulent transfer counts of the Complaint allege that the Defendant, an insider of the Debtor, received fraudulent transfers which the Trustee seeks to avoid and recover.[3] In the Answer, the Defendant admits to receiving all the transfers set forth in the

---

[3] Under the 2005 amendments to the Bankruptcy Code, Congress expanded the general reachback period under §548 to cover any transfer made or incurred "on or within two years before the date of the filing of the petition." The Motion for Summary Judgment refers only to the previous one year "reach back" period.

7

Complaint. *See* Answer, ECF 14. However, the Defendant denies that the transfers made in the one year prior to the petition date were "preferential transfers" under 11 U.S.C. § 547, and denies that the transfers made in the period more than one year and less than four years prior to the petition date were "connected to any fraudulent purpose." *See* Answer, ECF 14. The Defendant also denies that it did not provide reasonably equivalent value for each of the transfers to the Debtor or that the Debtor was insolvent at the time of any of the transfers. *See* Answer, ECF 14.

The Trustee argues that both the Answer and the Finkel Affidavit establish he is entitled to judgment as a matter of law under 11 U.S.C. § 548(a)(1) and the Connecticut Uniform Fraudulent Transfer Act ("CUFTA") on Counts II, III and IV of the Complaint. The Answer establishes that the transfers at issue did, in fact, occur. *See* Answer, ECF 14. The next to be decided issue is whether those transfers can be avoided.

For a transfer to be avoided under section 548(a)(1)(B)(i) as a constructive fraudulent transfer, a debtor must have "received less than reasonably equivalent value in exchange for such a transfer or obligation…" 11 U.S.C. § 548(a)(1)(B)(i). Constructive fraudulent transfers also require that the transaction leave the debtor financially vulnerable or insolvent. 11 U.S.C. § 548(a)(1)(B)(ii)(1). This means that a trustee may not avoid a transfer solely because the debtor was insolvent at the time of the transfer or solely because the debtor made a transfer for less than reasonably equivalent value; the trustee must demonstrate *both* insolvency and lack of reasonably equivalent value. 8 COLLIER ON BANKRUPTCY, ¶ 548.05[1]. Therefore, the Trustee must show that no genuine issue of material fact exists with regard to the claim that the Debtor was insolvent at the time the transfers were made and the claim that the Debtor did not receive reasonably equivalent value in exchange for the transfers. *See Delaney*, 504 B.R. at 746.

### a.  Insolvency of the Debtor

To recover a transfer as a constructively fraudulent conveyance, a bankruptcy trustee must establish that the debtor was insolvent when the transfer was made or was rendered insolvent by the transfer.  11 U.S.C. § 548(a)(1)(B)(ii)(1).  Section 101 of the Bankruptcy Code defines "insolvency" as the financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation.  11 U.S.C. § 101(32).  Insolvency is determined by a "balance sheet test"; in other words, whether a debtor's assets were exceeded by her liabilities at the time of the transfer.  *See* 11 U.S.C. § 101(32)(A); *see also* 8 COLLIER ON BANKRUPTCY, ¶ 548.05[3][a].  In addition to the definition of insolvency under the Bankruptcy Code, the CUFTA provides that "a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation" and that "a debtor who is generally not paying his debts as they become due is presumed to be insolvent."  *See* Conn. Gen. Stat. § 52-552c.

The Court finds the Trustee has established the first element of a constructive fraudulent transfer claim, insolvency, based on the Finkel Affidavit.  The Federal Rules of Evidence permit the admission of expert testimony when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  "In considering a motion for summary judgment, the district court may rely on 'any material that would be admissible or usable at trial.'"  *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 517 (2d Cir. 1994) (quoting 10A C. Wright & A. Miller, *Federal Practice and Procedure*: Civil § 2721 at 40 (2d ed. 1983)).  Thus, the Court may rely on expert affidavits if the expert testimony would be admissible at trial.  *See Hirsch v. Lopreato (In re Colonial Realty Co.)*, 209 B.R. 819, 822 (Bankr. D. Conn. 1997)*; see also Christian Bros. High Sch. Endowment v. Bayou No Leverage*

*Fund, LLC, (In re Bayou Group, LLC)*, 439 B.R. 284 (Bankr. S.D.N.Y 2010). The Court finds that the Finkel Affidavit meets the standard for admissibility.

The Finkel Affidavit establishes that the Debtor was insolvent in the four year period prior to the petition date based on an examination of the Debtor's books and records and that such testimony would be admissible at trial. *See* Finkel Affidavit, p.9. The Defendant proffered nothing to rebut the conclusion of insolvency established by the Finkel Affidavit. The Court therefore concludes that the Debtor was insolvent at the time of the transfers to the Defendant.

### b. Reasonably equivalent value

The term "reasonably equivalent value" is not defined by the Bankruptcy Code. Because value is defined under section 548(d)(2) as "property, or satisfaction or securing of a present or antecedent debt of the debtor," courts have traditionally divided the analysis of "reasonably equivalent value" into a two part inquiry. First, a court evaluates whether the debtor received *any* "value," and second it evaluates whether the value received was "reasonably equivalent" to what the debtor transferred. 8 COLLIER ON BANKRUPTCY, ¶ 548.05[2][a].

The initial determination of whether a debtor received any value can be resolved by applying the definition in section 548 (d)(2). While courts do not require that "equivalence of exchange be determined to the penny," courts have consistently found that "transfers for ephemeral, intangible, and psychological benefits do not satisfy the reasonably equivalent value test." 8 COLLIER ON BANKRUPTCY, ¶ 548.05[2][a].

The Finkel Affidavit establishes that there is no evidence in the Debtor's books and records indicating the Defendant provided reasonably equivalent value to the Debtor. *See* Finkel Affidavit p.9. A number of cases support the proposition that the Trustee is entitled to rely on an expert analysis of a debtor's books and records to establish that no reasonable equivalent value

was given in exchange for the transfers as a matter of law.  *See Babitt v. Schwartz (In re Lollipop)*, 205 B.R. 682 (Bankr. E.D.N.Y 1997) (granting summary judgment in an action to recover fraudulent transfers where the trustee relied on an expert accountant's examination of books and records and the accountant's affidavit stated the debtors books and records contained no evidence of consideration for payments to defendants); *Canney v. Fisher & Strattner, LLC (In re Turner & Cook, Inc.)*, 507 B.R. 101 (Bankr. D. Vt. 2014) (granting summary judgment in an action to recover fraudulent transfers where an analysis of the debtor's books and records indicated no reasonable equivalent value and no countervailing evidence created a material issue of fact); *Attebury Grain LLC v. Grayn Co*, 721 Fed. Appx. 669 (9th Cir. 2018) (affirming District Court's entry summary judgment against the defendant on a constructive fraudulent transfer claim where the defendant's books and records indicated no reasonably equivalent value was exchanged and the defendant did not present any countervailing evidence to support reasonably equivalent value); *In re Sterman*, 594 B.R. 229 (Bankr. S.D.N.Y. 2018) (granting summary judgment where there was no evidence showing value or fair consideration); *Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger & Harrison LLP)*, 408 B.R. 318 (Bankr. N.D. Cal. 2009) (granting summary judgment where the debtor's books and records and general ledger did not show any connection to any valuable goods or services and defendants did not demonstrate that the transfers were the result of a bargained for exchange).

The Court finds the Trustee has also established the second element of a constructive fraudulent transfer claim, lack of reasonably equivalent value.  The Finkel Affidavit establishes the Debtor's books and records show neither a business purpose for the transfers, nor any exchange of property or services of any value in exchange for the transfers.  In addition, the Defendant has not provided any countervailing evidence to the Finkel Affidavit.  Therefore,

there is no genuine issue of material fact as to whether reasonably equivalent value was provided to the Debtor by the Defendants in exchange for the transfers.

### c. Recovery of constructive fraudulent transfers.

The Trustee also seeks to recover the value of the transfers from the Defendant under 11 U.S.C. § 550.  When a transfer is avoidable under, as relevant here, sections 544 or 548 of the Code, section 550 enables a trustee to recover, "for the benefit of the estate, the value of such property from the initial transferee of such transfer."  11 U.S.C. § 550(a).  Since the Defendant had "dominion over the money or other asset [and] the right to put the money to one's own purposes," *see In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 57 (2d Cir. 1997) (discussing how to determine who is an initial transferee), it was the initial transferee.  Thus, because the transfers are avoidable as discussed above, and because the Defendant received the funds as an initial transferee, the Trustee is entitled to recover the value of the transfers from Defendant under section 550(a).

### VII.    Conclusion

Based upon the factual record presented by the Plaintiff, and upon the consideration of the record in this adversary proceeding and in the Debtor's Chapter 7 case, and because the undisputed facts demonstrate that the Debtor was insolvent at the time the constructive fraudulent transfers were made and there was a lack of reasonably equivalent value in exchange for the constructive fraudulent transfers; it is hereby

**ORDERED:** Pursuant to Federal Rule of Civil Procedure 56 and Federal Rule of Bankruptcy Procedure 7056, and Local Rule of Civil Procedure 56, the Trustee's Motion for Partial Summary Judgment is GRANTED on Counts II, III, and IV and a separate judgment will enter; and it is further

**ORDERED:** Summary Judgment is GRANTED on Count VI pursuant to 11 U.S.C. § 550 and the Trustee is entitled to recover the constructive fraudulent transfers set forth in Counts II, III, and IV; and it is further

**ORDERED:** A Status Conference will be held in this Adversary Proceeding on December 17, 2019 at 12:00 p.m. to discuss, among other things, the remaining counts of the Complaint.

Dated at Bridgeport, Connecticut this 13th day of November, 2019.

*Julie A. Manning*
*Chief United States Bankruptcy Judge*
*District of Connecticut*